UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RYAN MURPHY,
BETHANY MURPHY,
INFANT ONE, and
INFANT TWO

|  |  |
|---|---|
| Plaintiffs, | Civ. Action No.: _____ |
| v. | **COMPLAINT** |
| TOWN OF GREECE, | **JURY TRIAL** |
| MICHELLE MARINI, | **DEMANDED** |
| KARLEE BOLAÑOS, |  |
| BOLAÑOS LOWE, PLLC, |  |
| JENNIFER MORALES, |  |
| TRACY CASS, |  |
| and |  |
| CASS & MORALES |  |
| INVESTIGATIVE SERVICES, LLC |  |
| Defendants. |  |

Ryan Murphy, Bethany Murphy and their two infant children ("Plaintiffs" or "Murphy family"), by and through their attorneys, Abrams Fensterman, LLP, as and for their Complaint against the Defendants allege as follows:

**Preliminary Statement**

1.      Ryan Murphy is a vocal critic of the way that the Town of Greece conducts business.  This lawsuit is about the actions taken by that government to silence Ryan Murphy and the impact that those actions have had on his family.

**Jurisdiction and Venue**

2.      This Court has original federal question jurisdiction over the instant matter pursuant to 28 U.S.C. § 1331, because Plaintiffs' claims arise under 42 U.S.C. §§ 1983, 1985, 1986 and 29 U.S.C. § 206.

3.    Venue in this district is appropriate pursuant to 28 U.S.C. § 1391(b)(1) and (2), as all Defendants reside in this district and a substantial part of the events giving rise to the claims asserted herein occurred in this district.

4.    Pendent jurisdiction over the related state law claims is proper pursuant to 28 U.S.C. §1367.

5.    Plaintiffs demand a jury trial.

## The Parties

6.    Plaintiffs are all United States citizens and residents of the Town of Greece, County of Monroe, State of New York.

7.    Upon information and belief, the Town of Greece ("Greece" or the "Town") is a municipal corporation, having its principal office at 1 Vince Tofany Blvd., Greece, New York 14612-5030 and which maintains a police department known as the Greece Police Department.

8.    Upon information and belief, Michelle Marini is an individual residing in the County of Monroe, State of New York.

9.    Upon information and belief, Bolaños Lowe PLLC is a law firm and professional service limited liability company organized under the laws of the State of New York with its principal place of business at 16 S. Main Street, Pittsford, New York 14534.

10.    Upon information and belief, Karlee S. Bolaños, Esq. is an attorney licensed to practice law in New York with an office at 16 S. Main Street, Pittsford, New York 14534.

11.    Upon information and belief, Cass & Morales Investigative Services, LLC is a limited liability company organized under the laws of the State of New York with its principal place of business at 3159 S Winton Rd Ste 200, Rochester, New York 14623.

12.     Upon information and belief, Jennifer Morales, is an individual and member of Cass & Morales Investigative Services, LLC, with her principal place of business at 3159 S Winton Rd Ste 200, Rochester, New York 14623.

13.     Upon information and belief, Tracy Cass is an individual and member of Cass & Morales Investigative Services, LLC, with her principal place of business at 3159 S Winton Rd Ste 200, Rochester, New York 14623.

**Murphy Family**

14.     Ryan Murphy spends his days as a metal worker.  Bethany Murphy is Ryan Murphy's wife and together, they raise two daughters.

15.     On November 9, 2020, the Murphy family moved into their dream home, a 4-bedroom, 1,898 square foot home in the Town with an assessed value for real property tax purposes of $174,000.

16.     By April 2023, the assessed value of the home had increased to $206,200.

**Nextdoor Neighborhood Public Forum**

17.     Ryan Murphy researched and prepared a challenge to the increased tax assessment on his family's home.

18.     With valuations published on the internet, Ryan Murphy came to believe that he was being asked to pay more than his fair share because politicians and politically connected individuals received lower assessments and paid proportionately less to live in Greece.

19.     Upon information and belief, the practice of unfair assessments is so recognized in Greece that real estate professionals have been known to call the areas around officials' homes "protected areas" with lower taxes.

20.     On June 1, 2023, Ryan Murphy began posting his views about taxes and unfair assessments on a community forum.  The community forum is known as Nextdoor, which is described as an "app for neighborhoods where you can get local tips, buy and sell items, and more."

21.     Ryan Murphy's first post, dated June 1, 2023 stated:

<div style="border:1px solid black">

TOWN OF GREECE UNCOVERED PART 1

As with many local towns, Greece recently went through a reassessment.

The players involved are as follows:

Bill Reilich, Supervisor

Michelle Marini, Deputy Supervisor

Richard Baart, Greece Town Assessor

Joan Fox, Greece Town Appraiser

Sharon Quataert, Local Realtor who is on the Town Review Board

Most residents were upset to learn their assessments have dramatically increased.

Let's take a look at the players involved.

First is Deputy Supervisor Michelle Marini.  A long-time assistant to Bill Reilich dated back to his time as a local assemblyman.

She purchased her home (232 Torrey Pine Drive, 14612) in 2005 for $219,000.  From 2005 to 2022, her assessment was $219,000 every year.   In the latest reassessment, her assessments was adjusted down to $197,200.  A reduction of $21,800.  Compared to her neighbors and the town as a whole.  It should be a red flag.

Comparing similar homes near her 222 Torrey Pine Drive Assessment is $242,000. The home is 42 sq feet larger.  Yet, assessed for $45,000 more.  Another neighbor at 223 Torrey Pine is assessed for $218,000.  This house is 228 square feet smaller.  Yet, assessed for $21,000 more.

The Deputy Supervisor home could be sold for at least $390,000 per the Zillow real estate website.  The neighborhood is considered to be the premier neighborhood in Greece.

To be continued….

</div>

22.    On June 2, 2023, Ryan Murphy posted the following onto Nextdoor:

TOWN OF GREECE UNCOVERED PART 2

First off, thank you to everyone who viewed and responded yesterday.  Awareness is the only thing that can force change.  I would like to address a few comments I noticed.

One where I am I getting (sic) my info?  Zillow.com and realtor.com are relatively accurate when it comes to current value and history of assessments.  My data for last year (2022) came from the Monroe County tax website and this year's info came from the Greece proposed tax roll.

Two, what does the lower assessment equal to in savings?  If you look at the tax rates per $1,000 of assessed property values.  Town & County tax rate for Greece is 14.33.  The Greece School Tax rate Is 24.84. for a total of 39.17 tax rate for people living in Greece. Let's say The Deputy Supervisor's assessment  is $45,000 too low.  That would equate to a tax free savings of $1,762.65 a year ($45x39.17).  Just let everyone know that the total tax rate in Greece is 39.17 per $1,000 of assessed value.  Yes, some people will qualify for exemptions, i.e. STAR, Senior Low Income, etc.

Keep in mind that the town of Greece keeping property taxes lower than other residents is a form of Indirect Employee Compensation.  IT IS ILLEGAL!!!

Next is Joan Fox- Greece Town Appraiser.  She has been employed in this capacity for 21 years.  She purchased her home at 350 Edgemere Drive, 14612, in 2003 for $230,000. Since 2005, her assessment has been $248,000 every year, until this year.  It decreased to $226,900.  A reduction of $21,100.  Her home is listed on Zillow real estate website at an estimated value of $398,000.

This one deserves a closer look.  The home was originally purchased in partnership with her boyfriend at the time.  Greece Town Supervisor John Auberger.  By 2008, a Quit Claim Deed was processed, removing John Auberger's name from the deed after he stated a relationship with a married woman.  I am not going to get into dirty laundry here.  That is not the information I am focusing on.  Let's leave it at Mr. Auberger was cleared of all wrongdoing.  If you want the full history goggle Kurt Neusatz and Monica Neusatz 09/23/2010
John Auberger was termed out of his Supervisor position.  Bill Reilich, who was a local Assemblyman and the local GOP Chairman, has followed John Auberger, thouth this was not the first time.  When John Auberger left the Monroe County Legislature for the town of Greece.  Mr. Reilich took his legislative position.

To Be Continued . . . . .

23.     On June 4, 2023, Ryan Murphy posted:

Before we get into more dirt, I would like to give everyone a little background on me and issue a challenge. I am a construction worker, I moved to Greece in 2020 with my wife and two daughters. I was never looking for any of this.  My wife and I work hard, fix things ourselves, and do what we can to provide a good life for our kids.  I just have a BIG problem with being taken advantage of which I am busting my a$$ to get by.  When I was doing research to fight my assessment, I started finding these games, and well, here we are if anyone feels the way I do and wants answers email or call your board members asking what they are going to do about this.  If the other board members do something, they aren't involved.  If they don't, they are, and we are putting pressure on them.

Here is my challenge if anyone feels the way I do and wants answers email or call your board members asking what they are going to do about this.  If the other board members do something, they aren't involved.  If they don't, they are, and we are putting pressure on them.

24.     In other posts, Ryan Murphy highlighted the assessments of other officials and confirmed that he had contacted and reported what he thought was misconduct to several members of the news, the New York State Attorney General and to Town Supervisor Wiliam Reilich.

25.     Nextdoor moderators reacted to Ryan Murphy's posts by intermittently removing them and suspending his ability to post thereon.

26.     An individual identifying herself as either a forum moderator or relation, told Ryan and/or Bethany Murphy that the Town of Greece Administration exercised some control over the content of the forum and that content critiquing the Town's administration would not be allowed.

27.     Ryan Murphy advocated against the moderators' efforts to limit and censor his posts, expressing his belief that it was improper to censor the content on Nextdoor.

28.     On June 8, 2023 and only 7 days after his first post, the Town responded by sending him an unsigned email from info@greeceny.gov.

29.     The email directed Ryan Murphy to cease and desist posting his protected views and opinions on Nextdoor and threatened that if he continued, "individuals and/or the Town will need to consider whether any action, legal or otherwise, is warranted."

30.    Upon information and belief, the email was intended to threaten Ryan Murphy, chill the exercise of his free speech and cause him distress. Ryan Murphy posted this email on Nextdoor.

31.    In response, other members of Nextdoor commented:

Keep exposing the corruption, it's working. Don't let them bully you by making verbal threats saying they may take action? Like you said it's all available info to the public.

Last I checked, this is still America, and free speech is still our protected right. We appreciate knowing these facts and if the Town is "concerned" then maybe more transparency is needed, and education about the process.

I didn't see anything you said as harassment. Wow.

I thought the same thing, who is telling him to cease? Shouldn't they have communicated that part through a lawyer? Or given him someone to reply back to?

Facts = threats only when someone is doing something they shouldn't be doing.

"Formally directed" by someone afraid to sign the letter 😂😂😂

Feel like the letter writer is threatening all of us who look up facts. Hummm..

Sounds like a threat to you…"stop doing research and making public information easy for residents to see, or we will take action" lol goofballs.

What happened to freedom of speech. Your actions are threatening to someone stating public records. What gives you the right to threaten him!!!

One of the things that really stood out to me in their response was about taking action, legal or otherwise. Just what the hell does otherwise mean that almost sounds like a threat to you.

… this letter he received sounds like we are reverting to an undemocratic form of government… they'll be burning public info next.

Uh… Speaking of harassed/threatened… "legal or otherwise" is synonymous with, "legal or illegal", "legal or not", "legal or shady" in following: "these individuals….will need to consider whether any action, legal or otherwise, is warranted".

32.    One individual posted this statement:

By NY State law, you have a legal right to know who your accuser is. Let us all understand this. The Town of Greece sent you an email, requesting you stop posting factual information on a public website. But, they refused to identify themselves? Who do we send our communications to?

33.     Upon information and belief, the Town responded by sending a nearly identical letter to Ryan Murphy's home.  This version appears to have been signed by an individual with permission to sign the name William Lowe, a New York State licensed attorney.

34.     Upon information and belief, William Lowe was the Town's attorney and a member of Bolaños Lowe, PLLC.

35.     On or about June 18, 2023, upon information and belief, the Town circulated the following statement about Ryan Murphy that was posted on Nextdoor:

Amy Irwin Thank you for reaching out to me.  In the world of spiraling misinformation on social media it is refreshing that someone has reached out for an explanation versus going online and making accusatory statements.  The Attorney for the Town, had to step in after Town employees formally complained to the Town's Personnel Department after Mr. Murphy specifically identified and targeted them online.  Due to Mr. Murphy's targeting, these public servants have been receiving hateful messages and threats.  The Town Attorney was attempting to restore civility to the process.  Unfortunately, Mr. Murphy has not been exclusively stating "facts", despite his claims otherwise, and in certain instances, he has falsely accused public servants (who have nothing to do with the assessment process and/or no control over process) of corruption or collusion relating to assessments.  His claims regarding the actions of these Town employees of are serious, yet have no basis in fact, and appear to be made without any actual knowledge of the Town's assessment process.  While the Town Board welcomes factual debates, the Town will always come to the defense and support of employees who are unnecessarily and undeservedly subject to false accusations, harassment, and threats.

There was no corruption in this process, nor does this regulated process even allow room for corruption.  It is truly disheartening for me to see Town Officials and employees being called corrupt and accused of improper acts when they followed the relevant rules and guidelines, as they always do, through each step of the process.  Further, the Town Board acted with thoughtfulness, consideration, and in the best interest of all property owners in the Town on a uniform basis - giving no homeowner different or special treatment as Mr. Murphy has so wrongfully and negligently published. Mr. Murphy is either not thinking about the effects on the reputation of the individuals he has targeted with his false claims, or he doesn't care.  Also, Mr. Murphy is not sharing all of his information with his small online following- he has sent some direct messages to the Town that simply designed to annoy, threaten, or harass and serve no legitimate purpose.  These are presently under investigation.

36.     Like the cease-and-desist letter, this statement was a government issued message intended to intimidate, harass, coerce, defame, discredit and threaten Ryan Murphy.  The Town issued this communication to chill and deter Ryan Murphy from continuing his protected speech.

37.     Upon information and belief, Ryan Murphy was then permanently banned from posting on the Nextdoor forum.

**Murphy Family Action Plan**

38.     Based on the statements from the Town, both Ryan Murphy and Bethany Murphy believed that Ryan Murphy would be arrested due to his exercising his first amendment rights.

39.     Based on the statements from the Town, both Ryan Murphy and Bethany Murphy believed that Bethany Murphy could be arrested because her name may have been on Ryan Murphy's Nextdoor community forum registration information.

40.     Based on the statements from the Town, Ryan Murphy and Bethany Murphy believed that Ryan Murphy could lose his job because of an arrest.

41.     Based on the statements from the Town, Ryan Murphy and Bethany Murphy worried that their family was exposed to potential violence from political extremists because the Town had targeted Ryan Murphy.

42.     Most families have action plans in case of weather emergencies.  However, after receiving the communications from Greece, the Murphy family developed action plans in case of for political extremists or the arrest of one or both parents.

43.     Ryan and Bethany Murphy met with their children and talked about what they should do if their mom and/or dad were arrested.

44.     Ryan and Bethany Murphy modified their schedules so that if one of them was arrested, the other one could get their children safely in the custody of the other, or with another family member.

45.     The Murphy family altered their entire lifestyle in an attempt to keep their children safe, becoming hyper-vigilant about being in public and about their surroundings.

**Ryan Murphy's Next Steps**

46.     The more Ryan Murphy learned about Greece, the more he came to believe that the best, and perhaps only way he could protect his family was to make sure that as many people as possible knew about him and what happened to him.

47.     To that end, Ryan Murphy became an activist, journalist and government watchdog.

**The Greece Facebook Page**

48.     Greece has an official Facebook page for official Greece business that is operated by Greece agents.

49.     Ryan Murphy became a regular contributor on this page, posting comments about matters of public interest.

50.     On November 18, 2023, and solely in response to Ryan Murphy's comments about matters of public interest and importance, Greece banned its resident, Ryan Murphy, from its Facebook page.

51.     Upon information and belief, Greece also turned off comments on the Facebook page so that others could not post Ryan Murphy's posts on his behalf.

**Greece Town Board Meetings**

52.     Ryan Murphy began attending Town Board meetings and asking questions.

53.     On one occasion and as he walked in, Ryan Murphy overheard Michelle Marini telling someone that the "Ryan Murphy problem has been dealt with."  Upon information and belief, Greece had collected information about Ryan Murphy. Greece used that information to reach people close to Ryan Murphy and make him "shut his mouth."

54.     Greece also attempted to intimidate Ryan Murphy by increasing the police presence at the meetings.

55.     Upon information and belief, the police paid special attention to Ryan Murphy because they were told by one or more of the Defendants that they needed to watch Ryan Murphy more closely than any other attendee of the Town Board meetings.

**Greece Uncovered Facebook Page**

56.     On June 25, 2023, Ryan  Murphy started a Facebook page titled the Town of Greece Uncovered ("Greece Uncovered.")

57.     Greece has approximately 100,000 residents.  Greece Uncovered has over 8,600 followers and its posts are regularly shared with non-followers.

58.     Since its inception, Greece Uncovered has been flooded with posts about how the Greece government does business, and engages in misconduct, corruption and alleged criminal activity.

59.     Posts on the page have been critical of the Town's officials William Reilich and Michelle Marini.

60.     On the page, Ryan Murphy and others have regularly discussed (1) unfair tax assessments, (2) the Town's violations of the Open Meetings Law, (3) misconduct in the Greece Police Department, (4) real property development deals that were not approved by the proper process and consistent with law, (5) officials' use of Town employees and vendors for their personal matters and home improvements, (6) the lack of transparency about things happening at places, including the Mall at Greece/Ridge Center, and (7) the misleading attempts to change a Town law.

**The Greece Police Department**

11

61.     As Ryan Murphy continued to engage in protected speech, there was an increased Greece police presence in his neighborhood.

62.     On one occasion, a vehicle stopped in front of his home and directed an attached spotlight into Ryan Murphy's home in the middle of the night.

63.     On September 8, 2023, less than 3 months after he complained about his taxes, Greece Police Department Deputy Chief Aaron Springer came to Ryan Murphy's neighborhood in full uniform and asked his neighbors questions about him.

64.     Upon information and belief, a Deputy Chief is the second highest rank in the Greece Police Department.

65.     On September 12, 2023, Deputy Chief Springer went to Ryan Murphy's home to speak to his wife while Ryan Murphy was working and the vehicle he usually drove was not in the driveway.

66.     Ryan and Bethany's daughter believed that her dad was going to be arrested and became so upset that she could not breathe because of a panic attack.

67.     When Ryan Murphy arrived home, he called 911.

68.     Upon information and belief, his 911 call was routed to the Greece Police Department dispatcher.

69.     Ryan Murphy asked the dispatcher to send a Monroe County Sherriff to his home to make report.

70.     Ryan Murphy received a return call from someone identifying herself as a Greece Police Sergeant and she told him that a Monroe County Sheriff would not be sent to his home. When he asked why he could not make a report about the Greece Police Department to an outside agency, she told him that he would need to speak to Deputy Chief Springer.

71.    After that call, Bethany Murphy believed that if her family ever had an emergency such as an accident, the Greece Police Department would receive the 911 call and they would not send help.

72.    To this day, Bethany Murphy still believes that because of her husband's exercise of free speech, Greece emergency services are not available to her family.

73.    Deputy Chief Springer took other actions to investigate Ryan Murphy, including asking individuals to disclose Ryan Murphy's sources.

**Unlawful 24-Hour Surveillance**

74.    In or around January 2024, law enforcement agencies began investigating Greece, its officials, and some of the misconduct that had been reported on Greece Uncovered.

75.    Upon information and belief, in January 2024, Greece, Michelle Marini and New York State licensed attorney Karlee S. Bolaños, who is a principal of Greece's outside labor law firm Bolaños Lowe PLLC, conspired together with Tracy Cass, Jennifer Morales and Cass & Morales Investigative Services, LLC, to cause the Murphy family to be placed under 24 hour a day surveillance.

76.    Upon information and belief, this surveillance was intended to collect information to be used against Ryan Murphy to coerce him into discontinuing his journalistic investigations of crimes and corruption allegedly committed by Greece officials and agents and to leverage Ryan Murphy's silence.

77.    Upon information and belief, by and through Karlee S. Bolaños and the Bolaños law firm, Greece hired the private investigator firm of Cass & Morales Investigative Services, LLC ("Cass & Morales") to conduct 24 hour a day surveillance on Ryan Murphy and the Murphy family.

78.    Upon information and belief, Greece had an existing relationship with Cass & Morales because the Greece Police Department was conducting 24 hour a day surveillance on one of its injured officers through the use of a warrantless GPS tracker that Cass & Morales placed on that police officer's private family vehicle.

79.    In January 2024, Cass & Morales repeated those services for Greece by trespassing on the Murphy family's private vehicle and placing a GPS tracker so that Greece would have 24-hour a day surveillance on the Murphy.

80.    Like the aforementioned police officer, Greece and Cass & Morales did not have the owner's permission to place a GPS tracker on their vehicles.

81.    Like the aforementioned police officer, Greece and Cass & Morales did not have a warrant to place a GPS tracker on the Murphy family vehicle.

82.    Upon information and belief, the GPS tracker used by Cass & Morales required a fresh power source.

83.    Upon information and belief, for the months the GPS tracker was on Ryan Murphy's vehicle, Cass & Morales would have been required to replace the power source as needed by again trespassing on the Murphy family vehicle.

84.    New York State licensed attorney Karl Sleight, a partner at the law firm of Lippes Mathis LLP, represents the Town of Greece, William Reilich and Michelle Marini.  In a recent Declaration he filed with the Western District of New York District Court in one of those cases, Mr. Sleight disclosed Mr. Murphy's location on a specific time and date.

85.    Upon information and belief, this information was not necessary for the purpose of Mr. Sleight's Declaration and was instead proffered for the purposes of, among other things, publishing private information about Ryan Murphy (a tactic known as "doxing"), as well as to

intimate Ryan Murphy after he had already been identified as a potential witness in a federal court case.

86.     Upon information and belief, Mr. Sleight's disclosures were also intended to convey to Ryan Murphy that the Town was willing to use the information it had obtained via the illegal surveillance in an attempt to intimidate, tamper with or influence him as a witness and to discourage his use of free speech.

87.     Mr. Sleight also submitted a Declaration of Deputy Chief Springer containing a photograph of Ryan Murphy with a bullseye on his shirt.

88.     Upon information and belief, there was no reasonable explanation for including this photograph other than to dox Ryan Murphy, intimidate Ryan Murphy, and identify him as a person with a bullseye on his back.

89.     Upon information and belief, this conduct was done with a conscious disregard to Ryan Murphy's safety as such speech could reasonably be expected to incite political extremists to focus attention on Ryan Murphy or his family.  This is especially true as Deputy Chief Springer also stated that Ryan Murphy's speech placed police officers' lives in danger.

**Defendants' Actions Taken to Silence Ryan Murphy**

90.     As set forth above, Greece took the following actions to chill Ryan Murphy's speech about matters of public interest and importance:

- Upon information and belief, Greece intervened with Nextdoor moderators to remove Ryan Murphy's posts;

- Greece sent an unsigned email to Ryan Murphy threatening him if he did not stop posting on Nextdoor;

- Greece sent a signed letter to Ryan Murphy threatening him if he did not stop posting on Nextdoor;

- Greece published a statement disparaging Ryan Murphy and threatening him with an ongoing "investigation;"

- Greece used the 911 system to convey to Ryan Murphy that he would not be able to report any Town misconduct to an outside police agency;

- Greece caused Greece police officers to watch Ryan Murphy at Town Board meetings;

- Greece blocked Ryan Murphy from its public Facebook page to prevent him from posting;

- Upon information and belief, Greece caused additional patrols in the Murphy family's neighborhood, including one who utilized a flood light on their home;

- Greece caused its Police Department's second-highest ranked official, the Deputy Chief, to canvass Ryan Murphy's neighborhood;

- Greece caused its Police Department's second-highest ranked official, the Deputy Chief, to go to Ryan Murphy's house while he was at work to speak to his wife and their minor children;

- Greece caused a private investigator firm to trespass on the Murphy's private property/vehicle and conduct 24-surveillance on Ryan Murphy;

- Greece caused a private investigator firm to continue to trespass on the Murphy family's private property/vehicle to maintain the GPS tracker;

- Greece caused its law firm Lippes Mathias LLP and its Partner Karl Sleight to publicly disclose information about Ryan Murphy's exact whereabouts in a pleading, information that was illegally obtained by Greece;

- Greece caused its law firm Lippes Mathias LLP and its Partner Karl Sleight to file a Declaration in a publicly filed case with a photograph of Ryan Murphy with a bullseye on his back and an allegation that his exercise of free speech had placed law enforcement officers' lives in danger.

## The Damage Greece's Actions Have Caused

91.    All of the actions set forth herein, including, but not limited to those bulleted in paragraph 92, have caused severe emotional distress to Bethany Murphy.

92.    As a result of Greece's actions, Bethany Murphy is now under constant medical and psychiatric care for extreme anxiety and depression.

93.    Greece's actions have severely impacted the enjoyment of Bethany Murphy's life. Bethany Murphy now lives in a constant heightened state of awareness and is hyper-vigilant about cars on her street, her children's safety and whether her house is under surveillance.

94.    Bethany Murphy compulsively cleans their home so that she remains excruciatingly aware of the location of things therein because she fears that someone will trespass and leave listening or recording devices in their home.

95.    Bethany and Ryan Murphy's daughters have also experienced increased anxiety, stress and panic attacks.  These minor girls have lost partial enjoyment of their lives as they now feel they are under surveillance and are, at times, in fear of leaving their home.

96.     As a result of Greece's actions, Ryan Murphy has had his speech chilled and has incurred financial damages as the attention he has received from Greece has made him less employable.

### FIRST CAUSE OF ACTION
### UNDER 42 U.S.C. § 1983 FIRST AND FOURTEENTH AMENDMENTS
**Freedom Of Speech Claim Against Defendants Town of Greece, Michelle Marini, Karlee Bolaños and Bolaños Lowe, PLLC**

97.     Plaintiffs repeat and reallege each and every preceding allegation as if fully set forth herein.

98.     Pursuant to the First Amendment to the United States Constitution, every citizen may freely speak, write or publish their thoughts as it relates to matters of public concern.

99.     Defendants Town of Greece, Michelle Marini, Karlee Bolaños and Bolaños Lowe, PLLC violated the First Amendment from 2024 to present by engaging in unlawful speaker-based, content-based, and viewpoint-based discrimination against Ryan Murphy and his criticism of the Town of Greece.

100.     These Defendants began a campaign against the Murphy family by causing Ryan Murphy to be removed from the Nextdoor platform, beginning a campaign of harassment and surveillance of the family, interrogating his neighbors, causing a GPS tracker to be placed on the Murphy family vehicle, monitoring the movements of the Murphy family vehicle 24/7 until it was discovered and removed, and the other activities outlined in this Complaint, including, but not limited to those bulleted in paragraph 92.

101.     These Defendants did not have a compelling governmental reason, or any legitimate governmental reason at all, for these actions.

102.    These Defendants took these actions because they disapproved of Murphy's criticism of the Town of Greece and his reporting in a public forum about potential corruption in the Town's tax assessment process.

103.    These Defendants therefore engaged in speaker-based, content-based, and viewpoint-based discrimination by causing Mr. Ryan to be removed from the Nextdoor platform, engaging in a campaign of harassment and surveillance of the family, interrogating his neighbors, causing a GPS tracker to be placed on the Murphy family vehicle, monitoring the movements of the Murphy family vehicle 24/7 until it was discovered and removed and the other actions outlined in this Complaint, including, but not limited to those bulleted in paragraph 92.

104.    The above actions restricted Murphy's free speech rights and were therefore unconstitutional.

105.    Defendants violated Mr. Murphy's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to a matter of public concern by demanding that Nextdoor remove posts about the Town of Greece from Mr. Murphy's Nextdoor account.

106.    Defendants violated Mr. Murphy's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to a matter of public concern by demanding that Nextdoor suspend Mr. Murphy's Nextdoor account.

107.    Defendants violated Mr. Murphy's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to a matter of public concern by blocking him from the Town's Facebook page.

108.     Defendants violated Mr. Murphy's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to a matter of public concern by attempting to also have his Facebook page shut down.

109.     Defendants violated Mr. Murphy's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to a matter of public concern by having a Deputy Chief visit his home at a time he was at work to panic and intimidate his wife and young children.

110.     Defendants violated Mr. Murphy's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to a matter of public concern by having a Deputy Chief question his neighbors.

111.     Defendants violated Mr. Murphy's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to a matter of public concern by causing his home to be surveilled and photographed.

112.     Defendants violated Mr. Murphy's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to a matter of public concern by asking another Greece resident to inform on Mr. Murphy as a quid pro quo for providing the Citizen with information about the identity of an individual under investigation by the Town.

113.     Defendants violated Mr. Murphy's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to a matter of public concern by illegally installing a GPS tracking device on the Murphy family vehicle through the use of the Town attorney, Karlee Bolaños, and a private investigative service, and monitoring the vehicles movements 24/7.

114.    Defendants violated Mr. Murphy's First Amendment rights by retaliating against him for exercising his freedom of speech as a citizen with regard to a matter of public concern by taking the additional actions in this Complaint, including, but not limited to those bulleted in paragraph 92.

115.    At the time of the events in question, the law was clearly established that the government may not take these types of retaliatory actions. Any reasonable individual would have been on notice that doing so violated the First Amendment.

116.    Further, the retaliatory animus was embodied as an official policy or custom as the retaliatory actions taken were attributable to Town policymakers.

117.    As a direct and proximate result of Defendants' retaliatory actions against the Plaintiffs they have suffered and continue to suffer monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, in an amount to be determined by a trier of fact.

118.    Upon information and belief, these Defendants acted under the color of state law in their actions against the Plaintiffs and used the power that their positions gave to them.

119.    Defendant Karlee Bolaños, as an attorney for the Town, was acting as an agent of the Town, and was thus, a municipal actor for purposes of 42 U.S.C. § 1983.

120.    The Defendants acted maliciously, willfully, and in wanton and reckless disregard of the Plaintiffs' constitutional rights, in violation of the Plaintiffs' civil rights, as provided in 42 U.S.C. § 1983.

121.    As a result of the foregoing, the Plaintiffs must be made whole, with prejudgment interest, additional compensation for all damages, and attorney's fees.

**SECOND CAUSE OF ACTION**
**UNDER 42 U.S.C. § 1983 FIRST AND FOURTEENTH AMENDMENTS**
**Retaliation Claim Against Defendants Town of Greece, Michelle Marini, Karlee Bolaños**
**and Bolaños Lowe, PLLC**

122.    Plaintiffs repeat and reallege each and every preceding allegation as if fully set forth herein.

123.    A defendant violates the First Amendment where the plaintiff engaged in a constitutionally protected activity, the defendants' actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.

124.    These Defendants' aforementioned conduct constituted retaliation in violation of the First Amendment.

125.    Ryan Murphy was engaged in First Amendment protected speech in publishing in his concerns of Town corruption on the Nextdoor forum.

126.    Ryan Murphy engaged in First Amendment protected speech when he was forced to create a Facebook page after he was forced off the Nextdoor forum due to the actions of these Defendants.

127.    The Defendants were substantially motivated to harass and illegally surveil the family in order to stop Mr. Murphy from criticizing the Town.

128.    The Defendants were substantially motivated to harass and illegally surveil the family in order to discredit Mr. Murphy as a news source.

129.    The Defendants were substantially motivated to harass and illegally surveil the family in an attempt to garner some type of evidence to use to potentially arrest Mr. Murphy.

130.    The Defendants were substantially motivated to harass and illegally surveil the family because they wanted to retaliate against Mr. Murphy based on his activities of posting information on-line criticizing the practices of the Town of Greece and discussing possible corruption within the Town of Greece.

131.    At the time of the events in question, the law was clear that Town officials may not harass and illegally surveil the family for Ryan Murphy's exercise of his First Amendment rights.

132.    Any reasonable Town official, employee or agent would have been on notice that doing so would violate the First Amendment.

133.    The conduct was instigated and ratified by the final policy makers for the Town in that the decisions to harass and illegally surveil the family was taken by Michelle Marini in concert with the advice of the Town's attorneys.

134.    As a direct and proximate result of Defendants' retaliatory actions against the Plaintiffs they have suffered and continue to suffer monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, in an amount to be determined by a trier of fact.

135.    Upon information and belief, these Defendants acted under the color of state law in their actions against the Plaintiffs and used the power that their positions gave to them.

136.    Defendant Karlee Bolaños, as an attorney for the Town, was acting as an agent of the Town, and was thus, a municipal actor for purposes of 42 U.S.C. § 1983.

137.    The Defendants acted maliciously, willfully, and in wanton and reckless disregard of the Plaintiffs' constitutional rights, in violation of the Plaintiffs' civil rights, as provided in 42 U.S.C. § 1983.

138.    As a result of the foregoing, the Plaintiffs must be made whole, with prejudgment interest, additional compensation for all damages, and attorney's fees.

## THIRD CAUSE OF ACTION
## UNDER 42 U.S.C. § 1983 FOURTH AMENDMENT
**Unlawful Search and Seizure Against Defendants Town of Greece, Michelle Marini, Karlee Bolaños and Bolaños Lowe, PLLC**

139.    Plaintiffs repeat and reallege each and every preceding allegation as if fully set forth herein.

140.    Pursuant to the Fourth Amendment to the United States Constitution, every citizen has the right to be free from unlawful search and seizures by the government.

141.    This includes the right to not be illegally surveilled by the use of GPS trackers on private vehicles without due process.

142.    Upon information and belief, the Town of Greece did not have a search warrant to cause a GPS tracker to be attached to the Murphy family vehicle and to monitor the family on a 24/7 basis.

143.    The Defendants violated the Plaintiffs' Fourth Amendment rights by illegally causing a GPS tracking device to be installed on the Murphy family vehicle.

144.    As a direct and proximate result of the Defendants' actions against the Plaintiffs they have suffered and continue to suffer monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, in an amount to be determined by a trier of fact.

145.    Defendants' actions constitute a violation of the Plaintiffs' rights under the United States Constitution.

146.    Defendants' retaliatory actions were under the color of state law.

147.    Defendants knew, or should have known, that tracking the Plaintiffs via a GPS tracker without the benefit of a search warrant was a violation of the Plaintiffs' rights under the United States Constitution.

148.    Upon information and belief, Defendants' actions were taken pursuant to the Town's official policies, practices, and/or customs.

149.    Upon information and belief, Defendants' actions were taken by final decision-makers for purposes of Section 1983 liability.

150.    Upon information and belief, the individual Defendants acted under the color of state law in their actions against the Plaintiffs.

151.    At the time of the events in question, the law was clear that a warrant was required before a GPS tracker may be placed on a private citizens vehicle by a government entity.

152.    Any reasonable Town official, employee or agent would have been on notice that the warrantless placement of a GPS tracker on the Murphy family vehicle would violate the Fourth Amendment.

153.    The conduct was instigated and ratified by the final policy makers for the Town in that the decisions to harass and illegally surveil the family was taken by Michelle Marini in concert with the advice of the Town's attorneys.

154.    The Defendants acted maliciously, willfully, and in wanton and reckless disregard of the Plaintiffs' constitutional rights, in violation of the Plaintiffs' civil rights, as provided in 42 U.S.C. § 1983.

155.    As a result of the foregoing, the Plaintiffs must be made whole, with prejudgment interest, additional compensation for all damages, and attorney's fees.

## FOURTH CAUSE OF ACTION
### UNDER 42 U.S.C. § 1983 FOURTH AND FOURTEENTH AMENDMENTS
**Violations Of Due Process Against Defendants Town of Greece, Michelle Marini, Karlee Bolaños and Bolaños Lowe, PLLC**

156.    Plaintiffs repeat and reallege each and every preceding allegation as if fully set forth herein.

157.    Pursuant to the Fourth and Fourteenth Amendment to the United States Constitution, every citizen has the right to due process under the laws.

158.    This includes the right to have any intrusive actions be allowed only after the issuance of a warrant as part of due process.

159.    Upon information and belief, the Town of Greece did not apply for a warrant to place a GPS tracker on the Murphy family vehicle because they were aware that they did not have probable cause for the issuance of such a warrant.

160.    Despite knowing that there was a lack of probable cause, these Defendants used their agent attorney and private citizens in order to circumvent the Plaintiffs' Constitutional rights.

161.    Pursuant to New York's Penal Law § 120.45 (3), a person who uses an unauthorized GPS tracking device can be charged with Stalking in the Fourth Degree, which is a class B misdemeanor.

162.    Upon information and belief, the Town had no warrant to legally attach a GPS tracker to the Murphy family vehicle and to monitor the family on a 24/7 basis.

163.    The Defendants violated the Plaintiffs' Fourth and Fourteenth Amendment rights by illegally causing a GPS tracking device to be installed on the Murphy family vehicle.

164.    As a direct and proximate result of the Defendants' actions against the Plaintiffs they have suffered and continue to suffer monetary damages, humiliation, severe emotional

distress, mental and physical anguish and suffering, in an amount to be determined by a trier of fact.

165.    Defendants' actions constitute a violation of the Plaintiffs' rights under the United States Constitution.

166.    Defendants' retaliatory actions were under the color of state law.

167.    The law was clear at the time that surveilling the Plaintiffs without the benefit of a warrant were a violation of the Plaintiffs' rights under the United States Constitution.

168.    Upon information and belief, Defendants' actions were taken pursuant to the Town's official policies, practices, and/or customs.

169.    Upon information and belief, Defendants' actions were taken by final decision-makers for purposes of Section 1983 liability.

170.    Upon information and belief, the individual Defendants acted under the color of state law in their actions against the Plaintiffs.

171.    The Defendants acted maliciously, willfully, and in wanton and reckless disregard of the Plaintiffs' constitutional rights when they took the action, in violation of the Plaintiffs' civil rights, as provided in 42 U.S.C. § 1983.

172.    As a result of the foregoing, the Plaintiffs must be made whole, with prejudgment interest, additional compensation for all damages, and attorney's fees.

**FIFTH CAUSE OF ACTION**
**UNDER 42 U.S.C. § 1983 FOR CONSPIRACY**
**Against Defendants Town of Greece, Michelle Marini, Karlee Bolaños**
**and Bolaños Lowe, PLLC**

173.    Plaintiffs repeat and reallege each and every preceding allegation as if fully set forth herein.

27

174.    Defendants conspired with private individuals to deprive the Plaintiffs of their constitutional rights.

175.    The co-conspirators engaged in an overt act in furtherance of the conspiracy in causing a GPS tracker to be installed on the Murphy family vehicle.

176.    The co-conspirators engaged in an overt act in furtherance of the conspiracy in monitoring the movements of the Murphy family vehicle with the illegally installed GPS tracker.

177.    The co-conspirators engaged in an overt act in furtherance of the conspiracy in continuing to trespass on the Murphy's private property/vehicle by routinely changing out the power supply on the illegally installed GPS tracker.

178.    These actions have damaged the Plaintiffs.

179.    Plaintiffs have been deprived of their constitutional rights and privileges as a result of the conspiracy.

180.    These Defendants were acting under the color of law.

181.    As a result of the foregoing, the Plaintiffs must be made whole, with prejudgment interest, additional compensation for all damages, and attorney's fees.

**SIXTH CAUSE OF ACTION**
**UNDER 42 U.S.C. § 1983 FOURTEENTH AMENDMENT**
**Equal Protection/Selective Enforcement Claim Against Defendants Town of Greece,**
**Michelle Marini, Karlee Bolaños and Bolaños Lowe, PLLC**

182.    Plaintiffs repeat and reallege each and every preceding allegation as if fully set forth herein.

183.    These Defendants violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by harassing and illegally surveilling the family.

184.    Only individuals who criticize the Town or who are seen as enemies of the Town are subjected to retaliatory actions by Town of Greece employees and agents.

28

185.    The Town of Greece has a history of retaliating against whistleblowers and those who otherwise criticize the Town in any way.

186.    Other individuals were not only allowed to post positive items about the Town of Greece, but they were also actively encouraged to do so by Town agents when they made positive comments or requests.

187.    While other similarly situated individuals were allowed to post their positive opinions about the Town of Greece and its officials, the Plaintiffs were subjected to a retaliatory campaign for posting negative opinions about the Town and its officials.

188.    The Defendants true reason for harassing, surveilling and investigating the Plaintiffs was animus and ill will arising from their desire to retaliate and silence Ryan Murphy for his journalism and criticism of the Town of Greece and various Town officials.

189.    Such politically motivated retaliatory animus is not a legitimate, much less substantial or significant government interest.

190.    Because Defendants lacked a substantial, significant, or even legitimate government interest to harass, surveil and investigate the Plaintiffs, their actions could not have been tailored to that interest.

191.    At the time of the events in question, the law was clearly established that retaliatory animus is not a legitimate, much less substantial, government interest. Any reasonable Town official or agent would have been on notice that selectively using their law enforcement powers and utilizing private investigators because of this retaliatory animus violated the Equal Protection Clause.

192.    The retaliatory animus and actions taken against the Plaintiffs were attributable to the Town's policymakers and attorneys.

193.    Upon information and belief, the individual Defendants acted under the color of state law in their actions against the Plaintiffs.

194.    The Defendants acted maliciously, willfully, and in wanton and reckless disregard of the Plaintiffs' constitutional rights when they took the action, in violation of the Plaintiffs' civil rights, as provided in 42 U.S.C. § 1983.

195.    As a result of the foregoing, the Plaintiffs must be made whole, with prejudgment interest, additional compensation for all damages, and attorney's fees.

**SEVENTH CAUSE OF ACTION**
**UNDER 42 U.S.C. § 1985(2) CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**
**Against All Defendants**

196.    Plaintiffs repeat and reallege each and every preceding allegation as if fully set forth herein.

197.    Pursuant to Section 1985(2) "If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified …"

198.    The Defendants conspired together to retaliate and intimidate Plaintiff Ryan Murphy from being a witness in the cases of *Casey Voelkl v. Town of Greece, et al*, Civil Action Number 6:23-cv-06098. and *Robert Johnson v. Town of Greece, et al.*, Civil Action Number 6:23-cv-06441 that are currently pending in federal district court of the Western District of New York. ("Casey Voelkl case" and "Robert Johnson case").

199.    The Defendants engaged in an overt act in furtherance of the conspiracy by surveilling and taking pictures of the Plaintiffs' home; questioning Mr. Murphy's employer,

potential contractors and neighbors; encouraging another Citizen to report on Mr. Murphy by revealing investigative information; by having a GPS tracker placed upon the family vehicle at the behest of the Town and its attorney by a private entity; and by the other actions outlined in Paragraph 89..

200.    The Town knew or should have known that it was illegal to place a GPS tracker on a private vehicle without a warrant.

201.    Town officials knew or should have known that it was illegal to place a GPS tracker on a private vehicle without a warrant and to illegally monitor the vehicle's movements 24/7.

202.    Karlee Bolaños, as an attorney and agent of the Town, knew or should have known that it was illegal to place a GPS tracker on a private vehicle without a warrant and to illegally monitor the vehicle's movements 24/7.

203.    Morales and Cass, as licensed investigators knew or should have known that it was illegal to place a GPS tracker on a private vehicle without a warrant and to illegally monitor the vehicle's movements 24/7.

204.    This caused an injury to the Plaintiffs persons and property and was a deprivation of their rights and privileges as citizens of the United States.

205.    The conspiracy was aimed at interfering with individual rights that are protected against private, as well as government encroachment.

206.    The rights of Plaintiffs are secured not only from government infringement, but also from private action, as is evidenced by Penal Law §120.45(3).

207.    This conspiracy evidenced a meeting of the minds by the Defendants, such that Defendants entered into an agreement to illegally retaliate against the Plaintiffs, to achieve the

unlawful end of intimidating Mr. Murphy from being a potential witness in federal court cases against these same Defendants.

208.    This is part of a pattern of Town officials intimidating, threatening and retaliating against employees and citizens of the Town that the officials deem to be "enemies."

209.    This conduct would have the effect of intimidating other potential witnesses in the Casey Voelkl and Robert Johnson cases.

210.    The Defendants acted maliciously, willfully, and in wanton and reckless disregard of the Plaintiffs' constitutional rights when they took the action, in violation of the Plaintiffs' civil rights, as provided in 42 U.S.C. § 1985.

211.    As a result of the foregoing, the Plaintiffs must be made whole, with prejudgment interest, additional compensation for all damages, and attorney's fees.

## EIGHTH CAUSE OF ACTION
### UNDER 42 U.S.C. § 1986 ACTION FOR NEGLECT TO PREVENT VIOLATIONS OF CIVIL RIGHTS
### Against All Defendants

212.    Plaintiffs repeat and reallege each and every preceding allegation as if fully set forth herein.

213.    Pursuant to Section 1986, every person having the power to prevent or aid in the preventing of a violation of Section 1985, but neglects or refuses to do so, is liable.

214.    All of the Defendants were aware of the plan to place a GPS tracker on the Murphy vehicle.

215.    All of the Defendants knew or should have known that the warrantless placement of a GPS tracker on a private vehicle was illegal and improper and a violation of the Plaintiffs' constitutional rights.

216. All of the Defendants were in a position to prevent or aid in the prevention of the violation.

217. None of the Defendants took action to prevent or aid in the prevention of the violation.

218. As a result of the foregoing, the Plaintiffs must be made whole, with prejudgment interest, additional compensation for all damages, and attorney's fees.

### NINTH CAUSE OF ACTION
### TRESPASS
**Against Defendants Cass, Morales and Cass & Morales Investigative Services, LLC**

219. Plaintiffs repeat and reallege each and every preceding allegation as if fully set forth herein.

220. Defendants Cass and Morales placed the GPS tracker on the Murphy vehicle.

221. It was a violation of New York Penal Law §120.45(3) to place a GPS tracker on the Murphy family vehicle and monitor that vehicle.

222. Defendants Cass and Morales knew or should have known that it was a trespass to place a GPS tracker on a citizen's vehicle without a warrant.

223. There was no justification or permission for the placement of the GPS tracking device.

224. In placing said GPS tracker, Defendants Cass and Morales committed a trespass against the Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully request judgment as follows:

A. Damages in the form of pain and suffering in an amount not less than the jurisdictional limit of the Court;

B.      Punitive or exemplary damages against the individual Defendants in an amount according to proof at the time of trial;

C.      Statutory civil penalties as allowed in the causes of action set forth above;

D.      Costs of suit;

E.      Reasonable attorney's fees;

F.      Pre-judgment and post-judgment interest.

G.      Declaratory and Injunctive Relief restraining the Defendants from any future violations of the Plaintiffs' constitutional rights; and

H.      Such other and further relief as the court deems proper.

Dated:  Rochester, New York
        January 17, 2025

                                            Respectfully submitted,

                                            /s/Maureen T. Bass

                                            ABRAMS FENSTERMAN, LLP
                                            Maureen T. Bass, Esq.
                                            Karen Sanders, Esq.
                                            2280 East Avenue, First Floor
                                            Rochester, New York 14610
                                            Phone: (585) 218-9999
                                            Mbass@abramslaw.com
                                            KSanders@abramslaw.com
                                            *Attorneys for Plaintiffs*