UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RYAN MURPHY, BETHANY MURPHY,
INFANT ONE, and INFANT TWO,

                        Plaintiffs,

      v.

TOWN OF GREECE, MICHELLE MARINI,
KARLEE BOLAÑOS, BOLAÑOS LOWE,
PLLC, JENNIFER MORALES, TRACY CASS,
and CASS & MORALES INVESTIGATIVE
SERVICES, LLC,

                    Defendant.

_____

**DECISION AND ORDER**

6:25-CV-06041 EAW

## <u>INTRODUCTION</u>

Plaintiffs Ryan Murphy ("Mr. Murphy"), Bethany Murphy ("Mrs. Murphy"), and their minor children (Infant One and Infant Two) (collectively "Plaintiffs") commenced an action against defendants Town of Greece ("Town") and Michelle Marini ("Marini") (collectively "Town Defendants"); Karlee Bolaños and Bolaños Lowe, PLLC ("Bolaños Lowe") (collectively "Bolaños Lowe Defendants"); and Jennifer Morales, Tracy Cass, and Cass & Morales Investigative Services, LLC ("Cass & Morales") (collectively "Cass & Morales Defendants"), on January 17, 2025, asserting causes of action pursuant to 42 U.S.C. § 1983, § 1985(2), and § 1986.

Pending before the Court is the Town Defendants' motion to dismiss (Dkt. 11), Bolaños Lowe Defendants' motion to dismiss (Dkt. 15), and Cass & Morales Defendants' motion to dismiss (Dkt. 10) pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6).  For the reasons set forth below, the Town Defendants' motion is granted in part and denied in part, Bolaños Lowe Defendants' motion is granted in part and denied in part, and Cass & Morales Defendants' motion is denied.

## BACKGROUND

### I.     Factual Background

The instant facts are taken from Plaintiffs' complaint.  (Dkt. 1).  As required at this stage of the proceedings, Plaintiffs' well-pleaded factual allegations are taken as true.

Mr. Murphy is "an activist, journalist and government watchdog" with a history of making social media posts about the Town.  (*Id.* at ¶ 47).  Beginning on June 1, 2023, Mr. Murphy made several posts on the community forum Nextdoor about misconduct in the Town government, including that elected officials, such as Town Supervisor William Reilich and Deputy Supervisor Marini, received fraudulently low tax assessments on their properties, causing them to owe fewer annual property taxes.  (*Id.* at ¶¶ 17-24).  A Nextdoor moderator removed the posts, suspended Mr. Murphy's ability to continue posting, and informed Mr. or Mrs. Murphy that the Town "exercised some control over the content of the forum and that content critiquing the Town's administration would not be allowed." (*Id.* at ¶¶ 25-26).   On June 8, 2023, Mr. Murphy received an unsigned email from "info@greeceny.gov" directing him to cease and desist posting about the Town on Nextdoor and that legal action may be taken against him if he did not comply.  (*Id.* at ¶¶ 28-29).  A similar letter was sent to Mr. Murphy's home and signed by William Lowe, a Town attorney and member of Bolaños Lowe.  (*Id.* at ¶¶ 33-34).  On June 18, 2023, the Town circulated a post on Nextdoor denying Mr. Murphy's allegations.  (*Id.* at ¶ 35).  The Town's

post also stated that the "Attorney for the Town had to step in" in response to Mr. Murphy's comments and that Mr. Murphy's messages to public officials were "under investigation." (*Id.*)  Mr. Murphy was then permanently banned from posting on the Nextdoor forum.  (*Id.* at ¶ 37).

Mr. and Mrs. Murphy believed that the Town's communications were "intended to intimidate, harass, coerce, defame, discredit, and threaten" Mr. Murphy.  (*Id.* at ¶ 36).  They became fearful that Mr. and/or Mrs. Murphy would be arrested or subject to political violence, and they formed a family action plan to keep their children safe.  (*Id.* at ¶¶ 38-45).

Mr. Murphy began posting about "matters of public interest" on the Town's official Facebook page.  (*Id.* at ¶¶ 48-49).  The Town then banned Mr. Murphy from its Facebook page and turned off comments so that others could not post on Mr. Murphy's behalf.  (*Id.* at ¶¶ 50-51).  Mr. Murphy began attending Town Board meetings, after which the Town increased the police presence at its meetings.  (*Id.* at ¶¶ 52-55).  At one Town Board meeting, Mr. Murphy heard Marini say that the "Ryan Murphy problem has been dealt with."  (*Id.* at ¶ 53).

On June 25, 2023, Mr. Murphy started a Facebook page titled "the Town of Greece Uncovered."  (*Id.* at ¶ 56).  The page was "flooded with posts" about corruption and misconduct in the Town government, including critiques of Supervisor Reilich and Marini.  (*Id.* at ¶¶ 58-59).  Mr. Murphy posted about unfair tax assessments, the Town's violations of open meetings law, misconduct in the Greece Police Department ("GPD"), unlawful real property development deals, Town officials' improper use of Town employees and vendors

for personal matters, lack of transparency about Town development projects, and "misleading" attempts to change Town law.  (*Id.* at ¶ 60).

As Mr. Murphy continued to engage in criticism of the Town, there was an increased police presence in his neighborhood.  (*Id.* at ¶ 61).  On one occasion, a police vehicle stopped in front of his home in the middle of the night and shined a spotlight into the house. (*Id.* at ¶¶ 62, 90).  In September 2023, GPD Deputy Chief Aaron Springer ("Springer") questioned Mr. Murphy's neighbors about him.  (*Id.* at ¶ 63).  Springer also went to the Murphy home and tried to speak with Mrs. Murphy, which led one of the children to have a panic attack believing that Mr. Murphy was going to be arrested.  (*Id.* at ¶¶ 65-66).  Mr. Murphy called 911 but was told that "a Monroe County Sheriff would not be sent to his home" and that he needed to speak with Springer.  (*Id.* at ¶¶ 68-70).

In January 2024, law enforcement agencies began investigating Town officials for misconduct.  (*Id.* at ¶ 74).  That same month, Marini and Karlee Bolaños, an attorney with Bolaños Lowe, conspired with Cass & Morales Defendants to place the Murphy family under 24-hour surveillance.  (*Id.* at ¶ 75).  The Town—through Karlee Bolaños—hired Cass & Morales to have a warrantless GPS tracker placed on the Murphy family vehicle in order to coerce Mr. Murphy into silence.  (*Id.* at ¶¶ 76-81).  The Town had an existing relationship with Cass & Morales after it employed them to have a warrantless GPS tracker installed on another citizen's vehicle.  (*Id.* at ¶ 78).  Mr. Murphy had been identified as a potential witness in another federal court case against the Town.  (*Id.* at ¶ 85).

As a result of these actions, Mrs. Murphy has suffered severe emotional distress; she is under medical and psychiatric care for anxiety and depression, is hyper-vigilant about

her children's safety, and compulsively cleans her home out of fear that a recording device has been placed in it. (*Id.* at ¶¶ 91-94). Infant One and Two have also experienced increased anxiety, stress, and panic attacks, and are in fear of leaving their home. (*Id.* at ¶ 95). Mr. Murphy has experienced a chilling of his speech and incurred financial damages. (*Id.* at ¶ 96).

## II.    Procedural Background

On January 17, 2025, Plaintiffs filed a complaint against Town Defendants, Bolaños Lowe Defendants, and Cass & Morales Defendants. (Dkt. 1). Against Town Defendants and Bolaños Lowe Defendants, Plaintiffs asserted causes of action under 42 U.S.C. § 1983 for: (1) violation of Plaintiffs' freedom of speech under the First and Fourteenth Amendments; (2) retaliation under the First and Fourteenth Amendments; (3) unlawful search and seizure under the Fourth Amendment; (4) violations of due process under the Fourth and Fourteenth Amendments; (5) conspiracy; and (6) violations of the Equal Protection Clause. Against all defendants, Plaintiffs asserted a cause of action under 42 U.S.C. § 1985(2) for conspiracy to interfere with Plaintiffs' civil rights, and under 42 U.S.C. § 1986 for neglect to prevent violations of Plaintiffs' civil rights. Lastly, Plaintiffs asserted a state law trespass claim against Cass & Morales Defendants.

Cass & Morales Defendants and Town Defendants filed motions to dismiss on March 14, 2025 (Dkt. 10; Dkt. 11), and Bolaños Lowe Defendants filed a motion to dismiss on March 17, 2025 (Dkt. 15). Plaintiffs filed papers in opposition to all three motions (Dkt. 17; Dkt. 18; Dkt. 19), and the moving parties filed reply papers (Dkt. 20; Dkt. 21; Dkt. 22).

## DISCUSSION

### I.  Legal Standards

#### A.  Rule 12(b)(1)

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted). "Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.' '[A] plaintiff must demonstrate standing for each claim and form of relief sought.'" *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (alteration in original) (citations omitted).

When standing is challenged on the basis of the pleadings, a court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Carver*, 621 F.3d at 225 (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008)). Thus, when a Rule 12(b)(1) motion is facial, i.e., based solely on the pleadings, a plaintiff has no evidentiary burden and the "task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (alterations in original) (citation omitted); *see also Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (when a standing challenge is facial, a plaintiff has no evidentiary burden, "for both parties can be said to rely solely on the facts as alleged" in the complaint).

"Standing doctrine embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright,* 468 U.S. 737, 751 (1984) (emphasis added), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014). "A party must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *In re Bernard L. Madoff Inv. Sec. LLC.,* 721 F.3d 54, 58 (2d Cir. 2013) (quotation omitted).

"To satisfy the requirements of Article III standing, plaintiffs must demonstrate '(1) [an] injury-in-fact, which is a concrete and particularized harm to a legally protected interest; (2) causation in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.'" *Hu v. City of N.Y.*, 927 F.3d 81, 89 (2d Cir. 2019) (quoting *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 257 (2d Cir. 2013)) (alteration in original).

"Where, as here, the defendant moves for dismissal under Rule 12(b)(1), Fed. R.Civ. P., as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.

1990) (quotation omitted); *see also Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd* 496 F. App'x 131 (2d Cir. 2012) ("When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first."). "A court faced with a motion to dismiss . . . must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Sikhs for Justice Inc. v. Indian Nat'l Cong. Party*, 17 F. Supp. 3d 334, 338 (S.D.N.Y 2014) (quotation omitted). In other words, if a court lacks subject matter jurisdiction, it cannot reach the merits of the case.

## B. Rule 12(b)(6)

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546

(2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.    Standing

The Town Defendants and Bolaños Lowe Defendants challenge whether Mrs. Murphy, Infant One, and Infant Two have Article III standing to bring the first, second, sixth, seventh, and eighth causes of action.  (Dkt. 11-3 at 16-26; Dkt. 15-1 at 9).  Cass & Morales Defendants bring the same challenge to the seventh and eighth causes of action. (Dkt. 10-1 at 9).  All Defendants argue that on these claims, Mrs. Murphy and her minor children do not assert that they suffered any injury to their constitutional rights, only that they were injured as a result of alleged violations of Mr. Murphy's rights, which is insufficient for purposes of Article III standing.

Defendants' contentions fail because injury to a party's constitutional rights is not required to establish injury-in-fact.  Injury to constitutional rights is an element of a § 1983, § 1985, or § 1986 claim.  But to establish standing, a plaintiff must demonstrate, *inter alia*, an injury that is concrete and particularized, i.e., a "physical, monetary, or cognizable intangible harm[] traditionally recognized as providing a basis for a lawsuit in American

courts" which "affect[ed] the plaintiff in a personal and individual way." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 442-43 (2d Cir. 2022) (citations omitted). All Plaintiffs have done so here. Each cause of action relevant to Defendants' standing arguments is a challenge to the constitutionality of Defendants allegedly chilling Mr. Murphy's speech and installing a GPS tracking device on the Murphy family vehicle. Mrs. Murphy, Infant One, and Infant Two pleaded that as a result of those actions, they have suffered severe emotional distress. (Dkt. 1 at ¶¶ 91-95).

Although general allegations of emotional distress may be insufficient to amount to a concrete injury for standing purposes, "great stress, mental anguish, anxiety, and distress" are the sort of harm that may support Article III standing. *Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F.4th 58, 65 (2d Cir. 2021) (first citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 n. 7 (2021) ("[A] plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm."); and then citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 265 (2d Cir. 2006) ("[A]esthetic, emotional or psychological harms also suffice for standing purposes.")). Plaintiffs "must plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief," and "[a] perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing." *Id.* at 65-66 (quoting *Harry v. Total Gas & Power North Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018)).

Here, Mrs. Murphy alleges that as a result of Defendants unlawfully silencing and retaliating against Mr. Murphy's speech, she is under medical and psychiatric care for

"extreme anxiety and depression," is hypervigilant about her children's safety and whether her house is under surveillance, and lives in fear that someone will trespass and leave recording devices in her home. (Dkt. 1 at ¶¶ 92-94). The complaint also alleges that Infant One and Infant Two have experienced increased anxiety and stress, causing panic attacks and a fear of leaving their home. (*Id.* at 95).

The Court finds these allegations more than a "perfunctory allegation of emotional distress," *Denney*, 443 F.3d at 265, and sufficient for purposes of standing for the first, second, sixth, seventh, and eighth causes of action. Although Plaintiffs' failure to plead injury to the constitutional rights of Mrs. Murphy, Infant One, and Infant Two may be a barrier on the merits to their claims, it does not prevent them from establishing Article III standing. *See Bachman v. Town of Greece*, No. 6:25-CV-06086, 2025 WL 3525032, at *4-5 (W.D.N.Y. Dec. 9, 2025). And no Defendant raises a Rule 12(b)(6) challenge specific to Mrs. Murphy, Infant One, and Infant Two.[1] It is not the Court's responsibility to address arguments not raised by Defendants.

---

[1]    For instance, the Cass & Morales Defendants argue that the two federal causes of action asserted against them (the seventh and eighth causes of action) "allege *only* that Ryan Murphy's constitutional rights were violated" and thus those claims as asserted by Mrs. Murphy and the two children should be "dismissed for a lack of standing." (Dkt. 10-1 at 9). Similarly, the Town Defendants allege that the first, second, sixth, seventh, and eighth causes of action do not allege injuries to anyone's constitutional rights other than Mr. Murphy, and therefore Mrs. Murphy and the children lack standing to assert those claims. (Dkt. 11-3 at 17). The Bolaños Lowe Defendants simply incorporate the arguments of the Town Defendants on standing. (Dkt. 15-1 at 9). In other words, Defendants limit their attack on the sufficiency of any injury to Mrs. Murphy and the children to a standing-based argument only, and fail to raise any Rule 12(b)(6) challenge to the sufficiency of the alleged injuries suffered by Mrs. Murphy and the children.

III.    <u>Section 1983 Claims</u>

**A. Marini's Liability**

The Town Defendants initially move to dismiss all claims against Marini because, according to them, the complaint "plainly does not allege any actions by Ms. Marini that could confer liability."  (Dkt. 11-3 at 14).  Inasmuch as the complaint alleges that Marini engaged in a conspiracy to place the Murphy family under illegal surveillance (Dkt. 1 at ¶ 75), the Court disagrees.

To the extent the Town Defendants contend that all § 1983 claims against Marini should be dismissed because no such claim lies against a municipal officer in his or her official capacity, (Dkt. 11-2 at 14-15; Dkt. 21 at 8), it is not at all clear that Plaintiffs are attempting to sue Marini in her official capacity (*see* Dkt. 1 at ¶ 8 (identifying Marini as "an individual residing in the County of Monroe, State of New York")).  In other words, just because Plaintiffs make allegations about actions that Marini took using her powers as Deputy Town Supervisor, does not mean that she is being sued in her official capacity.  *See Tanvir v. Tanzin*, 894 F.3d 449, 459 (2d Cir. 2018) ("In an official capacity suit, 'the real party in interest . . . is the governmental entity and not the named official' . . . By contrast, 'individual capacity suits seek to impose individual liability upon a government officer for [her] actions under color of [ ] law.'" (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).  But to the extent Plaintiffs are attempting to name Marini in her official capacity, the Court agrees that any such claims should be dismissed and the suit may only proceed against Marini in her individual capacity.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against

the entity. It is not a suit against the official personally, for the real party in interest is the entity." (citation omitted)); *Alger v. Cnty. of Albany*, 489 F. Supp. 2d 155, 165 (N.D.N.Y. 2006) (dismissing a "claim against an individual in her official capacity [as] nothing more than a claim against the municipality itself"); *Baines v. Masiello*, 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003) ("a suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the entity of which the officer is an agent." (citations omitted)).

### B. Municipal Liability

The Town moves to dismiss Plaintiffs' § 1983 claims pursuant to *Monell v. New York City Dep't Soc. Servs.*, 436 U.S. 658, 690 (1978). The Town contends that Plaintiffs have failed to identify any custom, policy, or final policymaker responsible for the alleged actions that violated Plaintiffs' constitutional rights. (Dkt. 11-3 at 10-13; Dkt. 21 at 5-7).

"[T]o establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). "[T]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. To survive a motion to dismiss, the plaintiff

"cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Triano v. Town of Harrison, N.Y.*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) (quotation omitted). A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

Importantly, "[a] municipality may . . . be liable for even a single unconstitutional act of an official who has final policy-making authority." *Taylor v. City of New York (Dep't of Sanitation),* No. 17 CV 1424-LTS-SDA, 2019 WL 3936980, at *5 (S.D.N.Y. Aug. 20, 2019). "If an official's decision was, at the time it was made, for practical or legal reasons the municipality's final decision, then they are a final policymaker." *Id.* (alterations and quotation omitted); *see also Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983) ("A single unlawful discharge, if ordered by a person 'whose edicts or acts may fairly be said to represent official policy,' *Monell*, 436 U.S. at 694, may support an action against the municipal corporation. . . . Where an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy.");

*Barzilay v. City of New York*, 610 F. Supp. 3d 544, 618 (S.D.N.Y. 2022) ("Because '[a]n official has final authority if his decisions, at the time they are made, for practical or legal reasons constitute the municipality's final decisions,' to determine whether someone has the requisite policy-making authority, a court must consider 'proof of the official's scope of employment and his role within the municipal or corporate organization.'. . .  Thus, evidence that an individual 'held a top level position with [an organization] and had authority to order' personnel decisions, along with evidence that the individual's 'authority over personnel decisions was final' . . . is sufficient to show a municipal policy." (quoting *Rookard*, 710 F.2d at 45)).  "Mayors may be treated as policy-makers without proof of their specific powers and responsibilities.  Lesser officials, however, cannot similarly be presumed to embody plenary municipal power." *Donovan v. Norwich City Sch. Dist.*, No. 3:19-CV-1638, 2022 WL 623904, at *11 (N.D.N.Y. Mar. 3, 2022) (quoting *Rookard*, 710 F.2d at 45, n. 4).  At the pleading stage, a plaintiff must allege sufficient facts to support a fair inference for such a conclusion. *Taylor*, 2019 WL 3936980, at *5; *Morizio v. Town of Oyster Bay*, No. CV 14-1241 (LDW) (SIL), 2015 WL 13721649, at *7 (E.D.N.Y. Apr. 24, 2015) ("Notably, [a]t the pleadings stage, it is sufficient for the complaint to allege facts suggesting that Defendants may be determined to have final policymaking authority as a matter of law." (citation and quotation omitted)).

Plaintiffs have plausibly alleged facts demonstrating that it was the Town's official policy to attempt to silence Mr. Murphy's social media communications regarding the Town.  Plaintiffs allege that Mr. Murphy received an email from the email address "info@greeceny.gov" directing him to cease and desist posting about the Town.  (Dkt. 1 at

¶¶ 28-29). An identical letter, signed by Town attorney William Lowe, was then allegedly sent to Mr. Murphy's home. (*Id.* at ¶¶ 33-34). The complaint also alleges that the Town later posted a statement on Nextdoor that "[t]he Attorney for the Town, had to step in after Town employees formally complained to the Town's Personnel Department after Mr. Murphy specifically identified and targeted them online." (*Id.* at ¶ 35). Furthermore, Plaintiffs allege that the official Town of Greece Facebook page, operated by the Town, banned Mr. Murphy from posting on the page. (*Id.* at ¶ 50). The totality of these allegations supports that the Town endorsed a policy to prevent Mr. Murphy from posting his concerns about the Town on social media sites, and deployed the Town attorney to take action enforcing that policy. Plaintiffs have therefore sufficiently pleaded an official policy or custom for purposes of their freedom of speech claims.

In addition, Plaintiffs have alleged sufficient facts to support a fair inference that Marini, in her capacity as Deputy Town Supervisor, was a policymaker with final authority over the decision to hire Cass & Morales to investigate the Murphy family and ultimately place a GPS tracking device on the Murphy family vehicle. Plaintiffs allege that the installation of the tracking device was instigated and ratified by Marini in concert with Bolaños Lowe (*id.* at ¶¶ 133, 152-53), who hired Cass & Morales to conduct the surveillance (*id.* at ¶ 77). Plaintiffs further allege that Mr. Murphy heard Marini state at a Town Board meeting that the "Ryan Murphy problem has been dealt with" (*id.* at ¶ 53), supporting the allegation that Cass & Morales took such action at her direction. Although Plaintiffs will need to ultimately provide evidence to demonstrate that the role of Deputy Town Supervisor holds final decision-making authority over this matter, the instant

allegations are sufficient to survive a motion to dismiss. [2]  The Town's motion to dismiss Plaintiffs' § 1983 claims on the theory that Plaintiffs failed to plausibly establish the Town's liability under *Monell* is denied.

The Town additionally contends that any claims for punitive damages asserted against the Town pursuant to Plaintiffs' § 1983 claim must be dismissed.  (Dkt. 11-3 at 25). Inasmuch as "a municipality is immune from punitive damages under 42 U.S.C. § 1983," *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), the Court agrees that punitive damages may not be recovered against the Town.  But this is a strawman argument because, as Plaintiffs point out in their opposition memorandum (Dkt. 18 at 26), they have not sought punitive damages against the Town (*see* Dkt. 1 at 34).

---

[2]      Town Defendants contend that it is a matter of public record that as of January 2024 until her resignation, Marini was no longer Town Deputy Supervisor and instead held the title of Director of Constituent Services.  (Dkt. 11-3 at 13).  On a motion to dismiss, the Court may consider matters of public record "where both parties had notice of their contents and the documents are integral to the complaint."  *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)) (further citations omitted).  Town Defendants do not make any argument that those requirements are satisfied, and the Court is not convinced that it would be proper for the Court to consider the public record here.  In any event, insofar as Town Defendants seek to rely on the public record to assert that Marini did not hold final decision-making authority under her title of Director of Constituent Services, "[a]n official's title," although "relevant for the inferences fairly to be drawn therefrom[,]" is "not dispositive of [the official's] authority to make policy."  *Rookard*, 710 F.2d at 45. Because Town Defendants do not allege any change in Marini's job responsibilities that resulted from her title change, the Court is unpersuaded that the title alone establishes that Marini no longer held final policymaking authority after she assumed the role of Director of Constituent Services.

### C.    Bolaños Lowe Defendants' Liability

Bolaños Lowe Defendants contend that Plaintiffs cannot sustain a § 1983 action against them because Plaintiffs have failed to plausibly allege that Bolaños Lowe acted under the color of state law. (Dkt. 15-1 at 9-13). They further contend that Plaintiffs have not satisfied the compulsion, joint action, or public function test, one of which is required to determine that a private entity's action is attributable to the state. (*Id.*)

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *United States v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 941 F.2d 1292, 1295 (2d Cir. 1991) (citation omitted). As such, "[s]ection 1983 addresses only those injuries caused by state actors or those acting under color of state law." *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (citation omitted).

> For the purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the [s]tate," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate" ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

Under the "close nexus" test, "[a]ctions by a private party are deemed state action if 'there is a sufficiently close nexus between the State and the challenged action' that the actions by the private parties 'may be fairly treated as that of the State itself.'" *Chan v. City of N.Y.*, 1 F.3d 96, 106 (2d Cir. 1993) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)) (further citation omitted).  "The purpose of [the close-nexus] requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Id.* (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (emphasis in original)).  "Such responsibility may be found when, after the facts are sifted and weighed, it is evidence that a state or its political subdivision 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [state or political subdivision].'"  *Id.* (quoting *San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.,* 483 U.S. 522, 546 (1987) (further citation omitted)).

Here, the complaint alleges that "through Karlee S. Bolaños and the Bolaños law firm, [the Town] hired . . . Cass & Morales . . . to conduct 24 hour a day surveillance" on Plaintiffs (Dkt. 1 at ¶ 77), and that the tracking device was installed on the Murphy's vehicle "through the use of the Town attorney, Karlee Bolaños" (*id.* at ¶ 113).  The complaint further alleges that the Town, Karlee Bolaños, and Cass & Morales conspired and acted in concert to place the Murphy family under surveillance.  (*Id.* at ¶¶ 75, 133, 153).  Moreover, the complaint alleges that Karlee Bolaños was acting as an agent of the Town.  (*Id.* at ¶¶ 119, 136).  Such allegations are sufficient to plausibly establish that at the direction of the Town, Bolaños Lowe hired Cass & Morales to surveil the Murphy family and ultimately

place a tracking device on their vehicle.  In other words, the allegations plausibly indicate that the Town utilized Bolaños Lowe in its position as counsel for the Town to contract with a private investigative firm to engage in allegedly unlawful activity.  These allegations therefore allege that the Town is responsible for that action, not that the Town "[m]ere[ly] approv[ed] of or acquiesce[d] in the initiatives" of Bolaños Lowe.  *Blum*, 457 U.S. at 1004-05 ("Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment." (citations omitted)); *see Coleman v. Town of Hempstead*, 30 F. Supp. 2d 356, 362 (E.D.N.Y. 1999) ("The present Complaint meets the close-nexus test because the facts alleged suffice to permit a finding that LabCorp [acted] . . . at the direction of the Town, that such actions were in furtherance of enforcement of the Town's drug testing regime, that the actions of LabCorp in so doing were the responsibility of the Town, and that LabCorp's conduct was therefore state action.").  As such, Plaintiffs have alleged facts to support a plausible inference that Bolaños Lowe Defendants' actions constituted state action.

In addition, a private actor may be held liable under § 1983 when a plaintiff can show that the private actor entered into a conspiracy with a state actor to deprive that plaintiff of his constitutional rights.  "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Spear*, 954 F.2d at 68).  "Put differently, a private actor acts under color of state law when the private actor 'is a willful

participant in joint activity with the State or its agents.'" *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (further citation omitted)).

Here, Plaintiffs assert a specific cause of action under § 1983 for conspiracy in which they allege that Bolaños Lowe is a private entity acting under the color of state law. In addition to the above allegations, Plaintiffs contend that the Town conspired with Bolaños Lowe to deprive Plaintiffs of their constitutional rights, and that the Town and Bolaños Lowe engaged in an overt act in furtherance of the conspiracy by causing a GPS tracker to be installed on Plaintiffs' vehicle. (Dkt. 1 at ¶¶ 174-75). In consideration of all the referenced allegations, the Court finds that Plaintiffs have sufficiently pleaded that Bolaños Lowe engaged in state action by participating in a conspiracy with the Town in order to withstand Bolaños Lowe Defendants' motion to dismiss.

### D.    First Amendment—First Cause of Action

Plaintiffs' first cause of action alleges that the Town and Bolaños Lowe Defendants violated the First Amendment by engaging in unlawful speaker-based, content-based, and viewpoint-based discrimination against Mr. Murphy by, inter alia, banning him from the Town's Facebook page and causing him to be removed from the Nextdoor platform. (Dkt. 1 at ¶¶ 97-121).

The Town contends that Plaintiffs' first cause of action is insufficiently pleaded because there is no allegation that Mr. Murphy's speech was actually chilled or halted. (Dkt. 11-3 at 17-19; Dkt. 21 at 10-11). The Town argues that Mr. Murphy "has remained prolific in every forum" and therefore was not deprived of his constitutional right to free speech. (Dkt. 11-3 at 17). In addition, the Town asserts that because Plaintiffs have failed

to identify what comments Mr. Murphy made on social media sites that were deleted or led to him being blocked, Plaintiffs have not stated a plausible claim. (Dkt. 11-3 at 17-19; Dkt. 21 at 10-11).

In both traditional and designated public fora, "government entities are strictly limited in their ability to regulate private speech. . . ." *Pleasant Grove City, U.T. v. Summum*, 555 U.S. 460, 469 (2009). "[A]ny restriction based on the content of the speech must satisfy strict scrutiny," *id.* (citing *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985) ("[S]peakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest.")), "and restrictions based on viewpoint are prohibited," *id.* (citing *Carey v. Brown*, 447 U.S. 455, 463 (1980)).

The Town does not appear to question whether the relevant social media sites, Nextdoor and Facebook, constitute public fora. Instead, the Town argues that Mr. Murphy was not restricted from speaking because he remained able to post on other pages or social media sites, and that Mr. Murphy cannot demonstrate that his speech was regulated based on its content or viewpoint because he did not plead the content of the purportedly restricted speech.

The Court disagrees. On the first point, although Mr. Murphy plainly alleges that he did have a continued presence on social media sites such as Facebook even after the Town allegedly blocked him, it is ostensibly unlawful for a state actor to ban a private citizen from engaging in protected speech on a municipality's social media page regardless of whether the citizen can continue engaging in speech in other ways. Stated otherwise,

- 22 -

whether Mr. Murphy was able to utilize other platforms or pages to continue engaging in First Amendment speech regarding the Town is immaterial to the determination whether it was unlawful for the Town to block Mr. Murphy from its Facebook page and from posting on Nextdoor. So long as the speech is protected under the First Amendment, it is plausibly an infringement of a private citizen's rights for a government official to regulate a citizen's speech on a municipality's official social media site. *See Knight First Amend. Inst. v. Trump*, 928 F.3d 226, 236 (2d Cir. 2019), *vacated as moot sub nom. Biden v. Knight First Amend. Inst.*, 141 S. Ct. 1220 (2021) (mem.); *Robinson v. Hunt Cnty., T.X.*, 921 F.3d 440, 449-50 (5th Cir. 2019); *Davison v. Randall*, 912 F.3d 666, 687-688 (4th Cir. 2019).

The Town's second point is belied by the factual assertions in the complaint. The complaint contains detailed allegations of Mr. Murphy's social media posts (Dkt. 1 at ¶¶ 21-23, 60), the dates that he made them, and the content and dates of the Town's response (*id.* at ¶¶ 28-29, 33-37), including an admission that "[t]he attorney for the Town, had to step in" in response to Mr. Murphy's posts (*id.* at ¶ 35). Having reviewed the allegations concerning the content of the alleged posts, the Court does not agree that Mr. Murphy failed to plausibly claim that any restriction by the Town was content or viewpoint based. The Court denies the Town's motion to dismiss this claim.

### E.    Substantive Due Process—Fourth Cause of Action

Plaintiffs' fourth cause of action is a substantive due process claim. Plaintiffs allege that the Town and Bolaños Lowe Defendants violated their rights under the Fourteenth Amendment by illegally causing a GPS tracking device to be installed on the Murphy family vehicle. (Dkt. 1 at ¶ 163). The Town contends that the claim warrants dismissal

because it is duplicative of Plaintiffs' third cause of action, which alleges a violation of the Fourth Amendment for the same conduct. (Dkt. 11-3 at 19; Dkt. 21 at 11-12). Although cursory in nature, Bolaños Lowe Defendants make a similar argument. (Dkt. 15-1 at 15).

"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'" *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (cleaned up). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)).

That said, "[w]here a particular [constitutional] Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Schachtler Stone Prods. LLC v. Town of Marshall*, No. 6:21-CV-001100 (AMN/MJK), 2024 WL 4025862, at *13 (N.D.N.Y. Sept. 3, 2024) ("It is 'well established' that '[w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.'" (quoting *Hu*, 927 F.3d at 104)).

Here, Plaintiffs contend that Defendants' "conscience-shocking" behavior involves "illegally causing a GPS tracking device to be installed on the Murphy family vehicle." (Dkt. 1 at ¶ 163). But that is the same underlying conduct that serves as the basis for Plaintiffs' claims under the Fourth Amendment. (*See* Dkt. 1 at ¶ 143 ("The Defendants violated the Plaintiffs' Fourth Amendment rights by illegally causing a GPS tracking device to be installed on the Murphy family vehicle.")). "[W]here a claim can be characterized as a violation of the Fourth Amendment, it should be analyzed as such, and not as a substantive due process claim." *Green-Page v. United States*, No. 1:20-CV-00837, 2024 WL 3584194, at *13 (W.D.N.Y. July 30, 2024) (quoting *Lauro v. Charles*, 219 F.3d 202, 208 (2d Cir. 2000)); *see Ovalle v. Suffolk Cnty.*, No. 21-CV-5371 (BMC), 2024 WL 3986720, at *4 (E.D.N.Y. Aug. 29, 2024) ("The Supreme Court disfavors relying on substantive due process where, as here, the Fourth Amendment affords protection."). The Court finds that Plaintiffs' substantive due process claim is subsumed by its claim under the Fourth Amendment and is therefore dismissed.

### F.    Conspiracy—Fifth Cause of Action

The Town and Bolaños Lowe Defendants contend that Plaintiffs have failed to state a plausible claim for conspiracy under § 1983 because they have not alleged facts suggesting a "meeting of the minds" among Defendants to violate Plaintiffs' rights. (Dkt. 11-3 at 20-21; Dkt. 15-1 at 15-16). The Town additionally alleges that there are no factual allegations demonstrating that the Town engaged in an overt act in furtherance of a conspiracy to violate Plaintiffs' rights. (Dkt. 11-3 at 21).

"In order to survive a motion to dismiss on [their] § 1983 conspiracy claim, [Plaintiffs] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello*, 292 F.3d at 324-25 (citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). Although "claims of conspiracy 'containing only conclusory, vague, or general allegations'" are insufficient, *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)), "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy; rather[,] the pleadings must present facts tending to show agreement and concerted action," *Mercer v. Schriro*, 337 F. Supp. 3d 109, 147 (D. Conn. 2018) (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (internal quotations omitted)).

Plaintiffs have met that burden here. First, Plaintiffs allege that in January 2024, the Town conspired with Bolaños Lowe, in the firm's capacity as Town attorneys, to place the Murphy family under 24/7 surveillance in order to collect information to be used against Mr. Murphy to coerce his silence. (Dkt. 1 at ¶ 75). Plaintiffs further allege that the Town acted in concert with Bolaños Lowe and upon advice from Bolaños Lowe "to harass and illegally surveil the family." (*Id.* at ¶¶ 133, 153). The statement that Bolaños Lowe advised the Town on the installation of the tracking device demonstrates that some agreement may have been reached between the parties on that subject, which is particularly plausible in light of Bolaños Lowe's position as counsel to the Town. The fact that Bolaños Lowe then allegedly hired Cass & Morales to place a tracking device on the Murphy family

vehicle, and that a tracking device was purportedly discovered on that vehicle, circumstantially supports that an agreement was made to take that action. Thus, Plaintiffs have "provide[d] some factual basis supporting a meeting of the minds," which is all that is required to satisfy the first element of a conspiracy claim at this stage. *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003).

Second, Plaintiffs' allegations that Bolaños Lowe, at the direction of the Town, hired Cass & Morales to place a tracking device on the Murphy vehicle, and that a GPS tracker was ultimately installed on the vehicle, (Dkt. 1 at ¶¶ 75-77), plausibly alleges commission of an overt act to further their goal. Thus, the Town Defendants' and Bolaños Lowe Defendants' motions to dismiss this claim are denied.

### G. Equal Protection Clause—Sixth Cause of Action

Plaintiffs' sixth cause of action is a claim under the Equal Protection Clause. The Town Defendants contend that Plaintiffs have failed to state a cause of action because the complaint provides no examples of similarly situated individuals who were treated differently. (Dkt. 11-3 at 22-23; Dkt. 21 at 13).[3]

The Equal Protection Clause of the United States Constitution mandates equal protection under the law, and that similarly situated persons are treated equally. "To establish an Equal Protection claim, a plaintiff must show that he was treated differently

---

[3] The sixth cause of action is also asserted against Bolaños Lowe Defendants, but they have not moved to dismiss the claim on the basis of failure to allege adequate comparators. (*See* Dkt. 15-1 at 14-15). Accordingly, the sixth cause of action remains as asserted against these defendants because it is not the Court's job to reach arguments not raised by the parties.

than other persons who were similarly situated and that such differential treatment was either without a rational basis (a class of one claim) or was motivated by an intent to discriminate on an impermissible basis (a selective enforcement claim)." *Richard v. Dignean*, No. 6:11-CV-06013 EAW, 2023 WL 2480585, at \*4 (W.D.N.Y. Mar. 13, 2023) (cleaned up).

To prevail on a selective enforcement equal protection claim, such as the one asserted here, "a plaintiff must prove that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Burton v. Salerno*, No. 3:20-CV-1926 (VAB), 2023 WL 184238, at \*15 (D. Conn. Jan. 13, 2023) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). "A plaintiff generally must satisfy both elements to establish a claim of selective enforcement." *Carminucci v. Pennelle*, No. 18 CV 2936 (LMS), 2020 WL 4735172, at \*22 (S.D.N.Y. Aug. 14, 2020) (quoting *LaTrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999)).

In order to satisfy the first prong of a selective enforcement claim, Plaintiffs must identify comparators with whom they are "similarly situated in all material respects." *Hu*, 927 F.3d at 96 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). Although the standard does not require Plaintiffs and the comparators to be identical, their "circumstances must bear a reasonably close resemblance." *Id.* (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)).

- 28 -

Plaintiffs have not met that burden here. The allegations of comparators in the complaint are that "[o]nly individuals who criticize the Town or who are seen as enemies of the Town are subjected to retaliatory actions by [the] Town" and that "[w]hile other similarly situated individuals were allowed to post their positive opinions about the Town of Greece and its officials, the Plaintiffs were subjected to a retaliatory campaign for posting negative opinions about the Town and its officials." (Dkt. 1 at ¶¶ 184, 187). That conclusory allegation is not enough to identify who the alleged comparators are, let alone to establish similarities between Plaintiffs and the comparators. *See Servidio Landscaping, LLC v. City of Stamford*, No. 3:19-CV-01473 (KAD), 2020 WL 7246441, at *4 (D. Conn. Dec. 9, 2020) (dismissing selective enforcement claim because plaintiffs "d[id] not identify a single specific comparator, individual or corporation that is allegedly similarly situated to the [p]laintiffs"). Insofar as Plaintiffs allege that the proper comparators are residents of the Town who do not engage in public criticism of the municipality, that bald assertion is equally insufficient because it fails to plausibly allege that the residents are similar to Plaintiffs "in all material respects" beyond being Town residents. Although courts are "cautioned against deciding whether two comparators are similarly situated on a motion to dismiss," *Hu*, 927 F.3d at 97, a general allegation that Plaintiffs were treated differently from those similarly situated is not enough to survive a motion to dismiss, *Rushton v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). To allow an equal protection claim to proceed based on the vague, wholly conclusory allegation of similarly situated comparators like the one in Plaintiffs' complaint, would strip away the plausibility standard required by *Iqbal* and *Twombly*. Because Plaintiffs have failed to provide more than a

general allegation of comparators, their equal protection claim against the Town Defendants is dismissed.[4]

## IV.    Section 1985 and 1986 Claims—Seventh and Eighth Causes of Action

Plaintiffs' seventh cause of action is a claim for conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985(2).  Plaintiffs allege that Defendants conspired to intimidate Mr. Murphy from being a witness in two cases pending in District Court against the Town, and that Defendants furthered that conspiracy by surveilling Plaintiffs' home, questioning Mr. Murphy's employer and neighbors, and arranging for a GPS tracking device to be placed on the Murphy family vehicle.  (Dkt. 1 at ¶¶ 196-211).  Relatedly, Plaintiffs assert a cause of action under § 1986 for neglect to prevent violations of civil rights, alleging that Defendants were each in the position to prevent or aid in the prevention of the violation of Plaintiffs' civil rights, but failed to do so.  (Dkt. 1 at ¶¶ 212-18).

---

[4]    Although not raised by the Town Defendants, the equal protection claim would also fail because it is duplicative of the First Amendment retaliation cause of action.  "Courts in the Second Circuit have dismissed equal-protection claims that merely restate First Amendment retaliation claims."  *Salvana v. New York State Dep't of Corr. and Cmty. Supervision*, 621 F. Supp. 3d 287, 313 (N.D.N.Y. 2022) (quoting *Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 484 (E.D.N.Y. 2019) (dismissing an equal protection claim "based on . . . protected First Amendment activity" as duplicative: "courts should not unnecessarily stretch sections of the Constitution to reach wrongs already covered by other sections")).  Here, the equal protection claim is based on the assertion that "Defendants['] true reason for harassing, surveilling and investigating the Plaintiffs was animus and ill will arising from their desire to retaliate and silence Ryan Murphy for his journalism and criticism of the Town."  (Dkt. 1 at ¶ 188).  Furthermore, Plaintiffs state in their opposition papers that "the selective treatment was motivated by an intention to punish or inhibit the exercise of constitutional rights."  (Dkt. 18 at 22).  Thus, Defendants' alleged retaliation in response to protected speech is the basis for the alleged selective treatment, rendering the equal protection claim duplicative of any First Amendment retaliation claim.

"The essential allegations of a § 1985(2) claim of witness intimidation are (1) a conspiracy between two or more persons, (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiff."  *Chahal v. Paine Webber, Inc.*, 725 F.2d 20, 23 (2d Cir. 1984).  A conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the 'parties have a tacit understanding to carry out the prohibited conduct.'"  *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citations omitted).  However, conclusory, vague, and general allegations of a conspiratorial agreement are insufficient to allege conspiracy under section 1985.  *See id.* at 147; *see also Rolkiewicz v. City of N.Y.*, 442 F. Supp. 3d 627, 649 (S.D.N.Y. 2020) ("A conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct.  A plaintiff must, however, provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." (quoting *Sanders v. Long Island Newsday*, No. CV 09-2393(JFB)(SIL), 2015 WL 5475694, at *14 (E.D.N.Y. July 14, 2015))).

Defendants contend that Plaintiffs have not demonstrated a meeting of the minds among Defendants to prevent Mr. Murphy from testifying in a federal lawsuit against the Town.  (Dkt. 10-1 at 10-12; Dkt. 11-3 at 23-24; Dkt. 15-1 at 16-18).  The Court disagrees.  Contrary to Defendants' contentions, the claim is supported by more than just the allegations that Defendants identify as conclusory (*see* Dkt. 1 at ¶¶ 198, 207 ("Defendants conspired together to retaliate and intimidate Plaintiff Ryan Murphy from being a witness

in [] cases . . . that are currently pending in federal district court"; "This conspiracy evidenced a meeting of the minds by the Defendants, such that Defendants entered into an agreement to illegally retaliate against the Plaintiffs, to achieve the unlawful end of intimidating Mr. Murphy from being a potential witness in federal court cases against these same Defendants.")).     Considering the entirety of the allegations contained in the complaint, Plaintiffs plead, inter alia: that Mr. Murphy is a known "activist, journalist and government watchdog" who publicly posts about alleged corruption in the Town (*id.* at ¶ 47); the existence of federal lawsuits against the same or similar Defendants (*id.* at ¶¶ 84, 198, 207); that Mr. Murphy is identified as a witness in at least one of those lawsuits (*id.* at ¶ 85); that the Town took action in coordination with Bolaños Lowe to silence Mr. Murphy's social media communications about the Town (*id.* at ¶¶ 28-37, 48-51); that the Town coordinated with Bolaños Lowe to have the Murphy family surveilled (*id.* at ¶ 75); and that Bolaños Lowe contracted with Cass & Morales to have a GPS tracking device placed on the Murphy's car (*id.* at ¶ 79).  Those allegations are sufficient—at this stage of the proceeding where the Court must credit Plaintiffs' claims and draw reasonable inferences—to conclude that Defendants acted in concert to intimidate Mr. Murphy from being a potential witness in the federal court cases.

As a result, the Court is also unpersuaded by Defendants' arguments that Plaintiffs' claim under § 1986 requires dismissal.  "[Section] 1986 provides a cause of action against anyone who 'having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so.'" *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)

(citations omitted). "Thus, a § 1986 claim must be predicated upon a valid § 1985 claim." *Id.* (citing *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978)); *see also Mione v. McGrath*, 435 F. Supp. 2d 266, 272 (S.D.N.Y. 2006) ("[F]ailure to state a claim under Section 1985 is fatal to [a] Section 1986 claim."). Because the Court has found that Plaintiffs' § 1985(2) claim is sufficient to withstand the motions to dismiss, Defendants are incorrect that there is no claim for an underlying conspiracy that Plaintiffs' § 1986 claim may rely on (Dkt. 10-1 at 14-15; Dkt. 11-3 at 24-25; Dkt. 15-1 at 18). Defendants' motion to dismiss Plaintiffs causes of action pursuant to § 1985(2) and § 1986 are denied.

Lastly, Cass & Morales Defendants contend that if the Court dismisses Plaintiffs' § 1985(2) and § 1986 claims, then the Court should refuse to exercise supplemental jurisdiction over the state law trespass claim (Dkt. 1 at ¶¶ 219-224) because it would be the only remaining claim against them. But the Court has denied Defendants' motion to dismiss the § 1985(2) and § 1986 claims, and thus this argument is not applicable.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court grants the Town Defendants' motion to dismiss (Dkt. 11) to the extent it seeks to dismiss the claims (if any) asserted against Marini in her official capacity, and Plaintiffs' § 1983 claims for Equal Protection (fourth cause of action) and Substantive Due Process (sixth cause of action).  The Town's motion is denied in all other respects.  The Court also grants the motion to dismiss filed by Bolaños Lowe Defendants (Dkt. 15) to the extent it seeks to dismiss Plaintiffs' § 1983 claim for Substantive Due Process (sixth cause of action), but it is denied in all other respects. Finally, the motion to dismiss by Cass & Morales Defendants (Dkt. 10) is denied in all respects.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Judge

Dated: December 23, 2025
       Rochester, New York